UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM R. KLOPFENSTEIN, on Behalf of Himself and All Others Similarly Situated 508 North Gainsborough Avenue Royal Oak, MI  48067 <br><br> and <br><br> Adam McKinney, on Behalf of Himself and All Others Similarly Situated 7414 South Sheffield Court Lanesville, IN  47136 <br><br>                     Plaintiffs <br><br> vs. <br><br> FIFTH THIRD BANK c/o James R. Hubbard, Statutory Agent 38 Fountain Square Plaza, MD #10AT76 Cincinnati, OH  45263 <br><br>                     Defendant | CASE NO. 1:12-cv-2007 <br><br> JUDGE <br><br><br><br> **CLASS ACTION COMPLAINT** <br><br> *[Jury Trial Demanded]* |

## CLASS ACTION COMPLAINT

Plaintiffs, William Klopfenstein and Adam McKinney, through undersigned counsel, on behalf of themselves and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief from Defendant, Fifth Third Bank ("Fifth Third" or the "Bank"), arising from its improperly disclosed and unlawful Early Access cash advance loans.

2.      Payday lending—small loans due in full on the borrower's next "payday"—have a long and sordid history.  For centuries, unscrupulous lenders have been accused of taking advantage of working people desperate to make ends meet by offering loans at usurious and unconscionable rates.  Payday lenders have been perceived as operating on the shadowy fringe of the mainstream financial system.

3.      For these reasons, until very recently, national and state-chartered banks have left payday lending to other entities, often storefront check-cashing operations.  However, Fifth Third has become one of the first banks in the country to offer payday loans to its customers. Fifth Third calls its loans "Early Access" cash advances, but they are structured just like traditional payday loans—carrying a very high cost and requiring full repayment upon the customer's next paycheck.

4.      What distinguishes Fifth Third's payday loans from those made by storefront lenders is the automatic access Fifth Third has to its customers' checking accounts.  The bank deposits the loan amount directly into the customer's account and then repays itself the loan amount, plus the "fee," which is nothing more than usurious interest under another name, directly from the customer's next incoming direct deposit.  If direct deposits are not sufficient to repay the loan within 35 days, the bank repays itself anyway, even if it overdraws the customer's account.

5.     The high cost of Early Access loans is particularly unwarranted given the low risk posed to the Bank.  Because the Bank repays itself from the next incoming direct deposit, the risk of nonpayment is exceedingly low compared to other forms of credit.

6.     Like all payday lenders, Fifth Third promotes its loans as a quick solution to a short-term financial shortfall.  Fifth Third touts its payday lending product as being able to "help get you through a financial emergency."

7.     However, as the Center for Responsible Lending describes in its report "Big Bank Payday Loans" (July 2011) (attached hereto as Exhibit A), the typical payday borrower ends up trapped in a cycle of repeat loans.  Repayment in full from a single paycheck means borrowers regularly find themselves unable to repay a payday loan (plus interest) in full while also meeting their living expenses, so they often require another loan, resulting in a repeating cycle of debt.

8.     Moreover, Fifth Third Early Access loans, like all payday loans, carry shockingly high interest rates—sometimes resulting in an Annual Percentage Rate ("APR") of *1800%* or more.  These loans are exponentially more expensive than alternative products, such as credit cards or consumer finance loans.

9.     Fifth Third intentionally misleads its customers by stating both in its Early Access documents, attached hereto as Exhibit B and on customers' bank statements that the loans carry an APR of 120%.  That is not true.  In fact, Fifth Third Early Access loans regularly carry APRs of 1000% or more.

10.    The term "APR" has a well-known and uniform usage in consumer lending, one which is meant to convey the true cost of borrowing, including transaction fees and other charges.  The Federal Truth in Lending Act (15 U.S.C. 1601 *et seq*.), for example, defines an "APR" as "the cost of consumer credit as a dollar amount. It includes any charge payable

directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."

11.    Because Fifth Third charges a "fee" of $10 per every $100 advanced, the APR is 120% only if the loan is not paid until 30 days after it is issued.  But because Fifth Third, per the Easy Access terms, pays itself back in full from the customer's next direct deposit, the loan term is almost always less than 30 days—and the loan almost always carries an APR far in excess of 120%.

12.    In fact, as Plaintiffs have experienced, Early Access loans are often repaid within 1, 2, or 3 days – leading to an APR of 1000% or more.

13.    The potential for such unconscionable and usurious interest rates are concealed by Fifth Third.  Indeed, Fifth Third bank statements actively conceal the true APR being charged.

14.    Payday lenders have been under intense political and regulatory pressure in recent years.  Indeed, the Ohio legislature and Ohio voters, by state-wide referendum, acted to put unscrupulous payday lenders out of business—capping interest rates at 28% and instituting a host of other restrictions.  O.R.C. §§ 1321.35 through 1321.48 (the "Short-Term Lending Law") (Sept. 1, 2008) at O.R.C. § 1321.40(A).

15.    In addition, interest rates on other loans are regulated by O.R.C. § 1109.20(A), which caps the rate of interest that can be charged by Ohio banks at an even-lower 25%.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Fifth Third Bank.

17.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 because Fifth Third Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

18.     Plaintiff, William Klopfenstein, is a resident of the state of Michigan.

19.     Plaintiff, Adam McKinney, is a resident of the state of Indiana.

20.     Fifth Third Bank is a state bank chartered under the laws of the state of Ohio and supervised by the Federal Reserve Board.  It maintains its principal place of business in Cincinnati, Ohio.  Among other things, Fifth Third Bank is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative Class. Fifth Third Bank operates 1,377 banking centers, including 377 in Ohio.

## CLASS ALLEGATIONS

21.     Plaintiffs bring this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

22.     The proposed Class is defined as:

> All Fifth Third Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, used Fifth Third's Early Access loan program and repaid their loan in less than 30 days.

23.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

24.     Excluded from the Class are Fifth Third Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Fifth Third Bank has a controlling interest, all

customers who make a timely election to be excluded, governmental entities and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

25.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Fifth Third Bank's records.

26.     The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged interest on Early Access loans well in excess of the limits set by state law and in excess of the 120% APR Fifth Third represented in Early Access contracts and disclosures.  The representative Plaintiffs, like all Class members, has been damaged by Fifth Third Bank's misconduct in that he has been assessed and/or will continue to be assessed unlawful and deceptive Early Access charges. Furthermore, the factual basis of Fifth Third Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

27.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

28.     Among the questions of law and fact common to the Class are whether Fifth Third Bank:

> a.     Breached the contract it had with account holders regarding the Early Access program;
>
> b.     Misrepresented in Early Access documents and disclosures that the APR for Early Access loans was in all cases 120%;

    c.      Unconscionably charges Annual Percentage Rates on payday loans well in excess of 1000% and well in excess of the cost of actually providing such loans;

    d.      Conceals the true Annual Percentage Rates it charges on Early Access payday loans, both in the Early Access contract and documents and on monthly bank statements;

    e.      Charges excessive interest and/or finance charges on Early Access loans in violation of Ohio law;

    f.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

    g.      Converts money belonging to Plaintiffs and other members of the Class through its Early Access policies and practices; and

    h.      Is unjustly enriched through its Early Access policies and practices.

29.    Other questions of law and fact common to the Class include:

    a.      The proper method or methods by which to measure damages; and

    b.      The injunctive and declaratory relief to which the Class are entitled.

30.    Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same false Early Access disclosures and contracts and other related documents. Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

31.    Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular,

class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Fifth Third Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Fifth Third Bank's misconduct will proceed without remedy.

33.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

<strong><u>COMMON FACTUAL ALLEGATIONS</u></strong>

**A.**     <u>**Fifth Third's Relevant Customer Documents Regarding Early Access**</u>.

34.     Plaintiffs and all members of the Class made use of Fifth Third's Early Access program.  The  terms of the Early Access program are contained in standardized agreements (the "Early Access Terms and Conditions"), presented to its customers on a "take it or leave it" basis, drafted and imposed by Fifth Third Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.

35.    The Early Access Terms and Provisions contain a clause stating that "You understand that we are a state-chartered bank located in Ohio. The law that will apply to this Agreement as to issues related to interest and related charges will be the law of the State of Ohio."  Therefore, Ohio law governs the claims in this Complaint as to the Plaintiffs and all other members of the Class.

36.    In both the Early Access Terms and Conditions and on monthly bank statements provided to customers, Fifth Third states that the Annual Percentage Rate ("APR") for Early Access cash advances is, in all cases, 120%.  The Early Access Terms and Conditions state plainly:

> The transaction fee is $1 for every $10 borrowed. **This equates to an Annual Percentage Rate (APR) of 120%** (emphasis added).

37.    The Early Access Terms and Conditions also state in bold print:

### INTEREST RATE AND FEES

### Annual Percentage Rate (APR) for 120%

38.    Lastly, the Early Access Terms and Conditions state:

> [The] transaction fee will be reflected as an Annual Percentage Rate (APR) in the Fifth Third Early Access section of your checking account statement. The APR is a measure of the cost of credit, expressed as a yearly rate.

39.    As alleged herein, these contract terms and disclosures are misleading and are violated by Fifth Third because the APR for Early Access loans is in almost all cases far in excess of 120%.

40.    Furthermore, in the "Fifth Third Early Access Frequently Asked Questions," the Bank states:

> For example:

> $50 Advance with a $5 fee = $5/$50 = 10% X 12 Cycles = 120% APR.

> **We show the Annual Percentage Rate (APR) for Fifth Third Early Access so**
> **our customers can compare the cost of using this product against other forms**
> **of credit**, but there is no interest  charge associated with an Advance (emphasis
> added).

41.     Obviously, such a "comparison" is impossible if the APR is extremely inaccurate,
as it is here.

42.     Fifth Third misleads customers and attempts to avoid the proper application of the
interest rate cap in O.R.C. § 1109.20(A) when it states that "there is no interest charge associated
with an Advance."  In fact, the "fee" is interest for the payday loan offered by Fifth Third.

B.     **Fifth Third Bank's Early Access Policies and Practices Are Contrary to**
       **Regulatory Guidance.**

43.     The Federal Deposit Insurance Corporation (FDIC) has announced its intention to
investigate U.S. banks that are offering payday loans.  According to the agency's acting
Chairman, Martin Gruenberg, the FDIC is "deeply concerned" about banks offering payday
loans and has "asked the FDIC's Division of Depositor and Consumer Protection to make it a
priority to investigate reports of banks engaging in payday lending and recommend further steps
by the FDIC."  "FDIC to look at payday lending by banks," Bloomberg News, June 1, 2012.

44.     The FDIC has a longstanding guidance on payday lending that condemns many of
the same practices now used in Fifth Third's Early Access program.

45.     According to the FDIC's "Guidelines for Payday Lending" (FIL-14-2005)
(February 2, 2005):

> In recent years a number of lenders have extended their risk selection standards to
> attract subprime loans. Among the various types of subprime loans, "payday
> loans" are now offered by an increasing number of insured depository institutions.
>
> Payday loans (also known as deferred deposit advances) are small-dollar, short-
> term, unsecured loans that borrowers promise to repay out of their next paycheck

or regular income payment (such as a social security check). Payday loans are usually priced at a fixed dollar fee, which represents the finance charge to the borrower. Because these loans have such short terms to maturity, the cost of borrowing, expressed as an annual percentage rate (APR), is very high.

46.     In addition, Fifth Third violates the FDIC Guideline that states:  "*If the APR may be increased after the initial origination date, the advertisement must so state*" (emphasis added).  *Id.*

47.     Fifth Third also violates the FDIC Guideline that states:  "*A bank that fails to disclose finance charges and APRs accurately for payday loans—considering the small dollar tolerance for inaccuracies—risks having to pay restitution to consumers, which in some instances could be substantial.*" (emphasis added). *Id.*

48.     Fifth Third is not now regulated by the Office of the Comptroller of the Currency ("OCC"), though it was so regulated prior to 2009. That federal regulator of national banks has in the past cited concerns that payday lending "can pose a variety of safety and soundness, compliance, consumer protection, and other risks to banks."  OCC Advisory Letter on Payday Lending, AL 2000-10 (Nov. 27, 2000).

49.     The OCC has also stated that its guidance that addresses abusive lending practices should also be applied in the context of payday lending.  That guidance identifies the following indicators of abusive lending, which are characteristic of payday loans:

- Pricing and terms that far exceed the cost of making the loan; and

- Loan terms designed to make it difficult for borrowers to reduce indebtedness.

OCC Advisory Letter on Abusive Lending Practices, AL 2000-7 (July 25, 2000).

50.     Indeed, in 2003 the then-Comptroller of the Currency, John Hawke, Jr., ordered banks to "stay the hell away" from payday loans. "Biggest banks stepping in to payday arena," Star-Tribune (Minnesota), September 9, 2009.  The OCC stated that payday lending programs posed a "reputation risk" to banks because of their high fees, and ordered the banks to stop the practice.  The Federal Reserve shared the OCC's position.  Fifth Third has ignored these warnings.

51.     While Fifth Third claims to be offering Early Access as a service to its customers, its true motivation is revenue generation.  Indeed, Fiserv, a third-party consultant who has designed many bank-based payday lending schemes has touted its product as a way to make up for overdraft fee revenue lost after more stringent federal regulations kicked in.  According to Fiserv, bank-based payday lending "generates a new and diverse revenue stream to partially offset government proposed overdraft and credit card changes."  Fiserv Relationship Advance program description available at http://www.relationshipadvance.com/; *see also* Relationship Advance Press Release, November 18, 2009.

52.     Fiserv's marketing to banks of its payday lending product called  "Relationship Advance" has included promises that, within two years, revenue from the product "will be greater than all ancillary fee revenue combined" and that the product will result in little-to-no "overdraft revenue cannibalization;" that is to say, it will add another high fee source without reducing overdraft fee revenue.  *Id.*

C.    **Fifth Third Bank's Unconscionable Provisions and Policies**.

53.    Fifth Third Bank's Early Access policies and practices are or were unconscionable in the following respects, among others:

    a.    Misrepresenting in Early Access documents and disclosures that the APR for Early Access loans was in all cases 120%, when in fact it was much higher;

    b.    Charging Annual Percentage Rates on payday loans well in excess of 1000%;

    c.    Charging Annual Percentage Rates on payday loans well in excess of the cost of actually providing such loans;

    d.    Concealing the true Annual Percentage Rates it charges on Early Access payday loans, both in the Early Access contract and documents and on monthly bank statements;

    e.    Charging excessive interest and/or finance charges on Early Access loans in violation of Ohio law;

    f.    Requiring its customers to enter into standardized account agreements which include unconscionable provisions; and

    g.    Violating FDIC and OCC regulatory guidance on payday lending.

D.    **Fifth Third Bank's Practices Harmed Plaintiffs**.

54.    On May 31, 2011, Plaintiff Klopfenstein received an advance in his checking account in the amount of $200.  Three days later, on June 3, 2011, Plaintiff received a direct deposit and Fifth Third debited $220 to repay that loan.  This reflects an APR of 1217%.

55.    The monthly account statement issued by Fifth Third to Plaintiff Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

56.     On July 19, 2011, Plaintiff Klopfenstein received an advance in his checking account in the amount of $400.  Two days later, on July 21, 2011, Plaintiff received a direct deposit and Fifth Third debited $440 to repay that loan.  This reflects an APR of 1825%.

57.     The monthly account statement issued by Fifth Third to Plaintiff Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

58.     On July 26, 2011, Plaintiff Klopfenstein received an advance in his checking account in the amount of $100.  Three days later, on July 29, 2011, Plaintiff received a direct deposit and Fifth Third debited $110 to repay that loan.  This reflects an APR of 1217%.

59.     The monthly account statement issued by Fifth Third to Plaintiff Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

60.     On August 1, 2011, Plaintiff Klopfenstein received an advance in his checking account in the amount of $100.  Three days later, on August 4, 2011, Plaintiff received a direct deposit and Fifth Third debited $110 to repay that loan.  This reflects an APR of 1217%.

61.     The monthly account statement issued by Fifth Third to Plaintiff Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

62.     On August 8, 2011, Plaintiff Klopfenstein received an advance in his checking account in the amount of $250.  Four days later, on August 12, 2011, Plaintiff received a direct deposit and Fifth Third debited $275 to repay that loan.  This reflects an APR of 913%.

63.     The monthly account statement issued by Fifth Third to Plaintiff Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

64.     On August 16, 2011, Plaintiff Klopfenstein received an advance in his checking account in the amount of $150.  Two days later, on August 18, 2011, Plaintiff received a direct deposit and Fifth Third debited $165 to repay that loan.  This reflects an APR of 1825%.

65.     The monthly account statement issued by Fifth Third to Plaintiff Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

66.     On August 3, 2009, Plaintiff McKinney received an advance in his checking account in the amount of $300.  Four days later, on August 7, 2009, Plaintiff received a direct deposit and Fifth Third debited $330 to repay that loan.  This reflects an APR of 913%.

67.     The monthly account statement issued by Fifth Third to Plaintiff McKinney states, incorrectly, that the APR for this transaction was 120%.

68.     On September 16, 2009, Plaintiff McKinney received an advance in his checking account in the amount of $400.  Two days later, on September 18, 2009, Plaintiff received a direct deposit and Fifth Third debited $440 to repay that loan.  This reflects an APR of 1825%.

69.     The monthly account statement issued by Fifth Third to Plaintiff McKinney states, incorrectly, that the APR for this transaction was 120%.

70.     On November 13, 2010, Plaintiff McKinney received an advance in his checking account in the amount of $250.  Two days later, on November 15, 2010, Plaintiff received a direct deposit and Fifth Third debited $275 to repay that loan.  This reflects an APR of 1825%.

71.     The monthly account statement issued by Fifth Third to Plaintiff McKinney states, incorrectly, that the APR for this transaction was 120%.

72.     On January 18, 2011, Plaintiff McKinney received an advance in his checking account in the amount of $200.  Three days later, on January 21, 2011, Plaintiff received a direct deposit and Fifth Third debited $220 to repay that loan.  This reflects an APR of 1217%.

73.     The monthly account statement issued by Fifth Third to Plaintiff McKinney states, incorrectly, that the APR for this transaction was 120%.

74.     On January 19, 2012, Plaintiff McKinney received an advance in his checking account in the amount of $70.  One day later, on January 20, 2012, Plaintiff received a direct deposit and Fifth Third debited $77 to repay that loan.  This reflects an APR of 3650%.

75.     The monthly account statement issued by Fifth Third to Plaintiff McKinney states, incorrectly, that the APR for this transaction was 120%.

76.     Fifth Third's charging of Annual Percentage Rates in excess of 120% breaches the contract it has with accountholders.

77.     Fifth Third's charging of Annual Percentage Rates on Early Access loans in excess of 120% violates O. R. C. § 1109.20(A).

78.     Fifth Third Bank's wrongful policies and practices described above harmed Plaintiffs and members of the Class.

79.     Based on information and belief, the interest charges assessed Plaintiffs are representative of millions of dollars of Early Access interest charges and fees that the Bank wrongfully assessed and deducted from its customers' accounts.

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of the Class)

80.     Plaintiffs incorporate by reference the preceding paragraphs.

81.     Plaintiffs and Fifth Third Bank have contracted for loans under Fifth Third's Early Access program, as embodied in Fifth Third's Early Access Terms and Conditions and related documentation.

82.     Fifth Third has breached that contract by charging Annual Percentage Rates on Early Access payday loans in excess of 120%.

16

83.     Moreover, Fifth Third has breached the contract by failing to provide users with an accurate means of comparing credit provided under the Early Access program with other borrowing options.

84.     Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under the Early Access Terms and Conditions.

85.     Plaintiffs and members of the Class have sustained damages as a result of Fifth Third Bank's breach of contract.

**SECOND CLAIM FOR RELIEF**
**Fraud**
**(On Behalf of the Class)**

86.     Plaintiffs incorporate by reference the preceding paragraphs.

87.     Defendant represented to each member of the class through the Early Access contract and documents and on the customers' bank statements that Early Access loans carry an Annual Percentage Rate, or annualized cost of borrowing, of 120%.

88.     These representations were false.  In fact, Fifth Third Early Access loans regularly carry APRs of 1000% or more and, in the case of each and every member of the Class, carried an APR in excess of 120%

89.     Defendant knew that these representations were false.

90.     Based upon these representations made by Defendant falsely and with intent to deceive, and in reasonable reliance on them, Plaintiffs and members of the Class were charged interest in excess of that which was represented in Fifth Third's disclosures.

91.     Defendant intended that Plaintiffs and members of the Class would rely on their representations and enter into these loan agreements.

92.     Defendant further intended that Plaintiffs and members of Class would pay the interest in excess of that disclosed by Fifth Third.  In fact, because Defendant had control of the Plaintiffs' bank accounts, they were certain of it.

93.     Plaintiffs and members of the Class reasonably relied on the representation that the Defendant would charge them the 120% APR disclosed by Fifth Third and no more.

94.     Defendant's representations were material to inducing the Plaintiffs and members of the Class to take the loans and causing Plaintiffs and members of the Class to believe that the Defendant would collect only the APR on each loan that they were actually owed.

95.     As a direct and proximate result of Defendant's fraud, Plaintiffs and members of the Class have suffered damages by paying more than they owed.

96.     Defendants engaged in this conduct in the same way to all members of the Class who reasonably relied thereon in similar fashion.

### THIRD CLAIM FOR RELIEF
### Violations of Ohio Rev. Code § 1109.20
**(On Behalf of the Class)**

97.     Plaintiffs incorporate by reference the preceding paragraphs.

98.     O.R.C. § 1109.20(A) prohibits banks from receiving finance charges and interest in excess of 25%.

99.     Both under the terms of the Early Access payday loan program and when acting in violation of that agreement, Fifth Third has routinely charged Plaintiffs and members of both the Class interest and/or finance charges well in excess of 25%.

100.    Fifth Third's Early Access "transaction fee" is interest for the purposes of O.R.C. § 1109.20(A).

101.     Defendant received this usurious interest and/or finance charges in violation of Ohio law.

102.     Plaintiffs and members of both the Class and the Non-Class are entitled to recover the difference between the rate they were charged by Fifth Third and the maximum interest rate allowable under Ohio law.

### FOURTH CLAIM FOR RELIEF
### Conversion
**(On Behalf of the Class)**

103.     Plaintiffs incorporate by reference the preceding paragraphs.

104.     Fifth Third Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

105.     Fifth Third Bank has wrongfully collected Early Access fees from Plaintiffs and the members of the Class and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

106.     Fifth Third Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Class, without legal justification.

107.     Fifth Third Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Class.

108.     Fifth Third Bank intends to permanently deprive Plaintiffs and the members of the Class of these funds.

109.     These funds are properly owned by Plaintiffs and the members of the Class, not Fifth Third Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Class.

110.     Plaintiffs and the members of the Class are entitled to the immediate possession of these funds.

111.     Fifth Third Bank has wrongfully converted these specific and readily identifiable funds.

112.     Fifth Third Bank's wrongful conduct is continuing.

113.     As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Class have suffered and continue to suffer damages.

> By reason of the foregoing, Plaintiffs and the members of the Class are entitled to recover from Fifth Third Bank all damages and costs permitted by law, including all amounts that Fifth Third Bank has wrongfully converted.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
**(On Behalf of the Class)**

114.     Plaintiffs incorporate by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

115.     Plaintiffs assert a common law claim for unjust enrichment.

116.     By means of Fifth Third Bank's wrongful conduct alleged herein, Fifth Third Bank knowingly provides banking services to Plaintiffs and members of the Class that are unfair, unconscionable and oppressive.

117.     Fifth Third Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class.  In so doing, Fifth Third Bank acted with conscious disregard for the rights of Plaintiffs and members of the Class.

118.     As a result of Fifth Third Bank's wrongful conduct as alleged herein, Fifth Third Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

119.    Fifth Third Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

120.    Under the common law doctrine of unjust enrichment, it is inequitable for Fifth Third Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Early Access fees on Plaintiffs and members of the Class in an unfair, unconscionable and oppressive manner.  Fifth Third Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

121.    The financial benefits derived by Fifth Third Bank rightfully belong to Plaintiffs and members of the Class.  Fifth Third Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Fifth Third Bank traceable to Plaintiffs and the members of the Class.

122.    Plaintiffs and members of the Class have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### Unconscionability
**(On Behalf of the Class)**

123.    Plaintiffs incorporate by reference the preceding paragraphs.

124.    Fifth Third Bank's Early Access policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

    a.    Misrepresenting in Early Access documents and disclosures that the APR for Early Access loans was in all cases 120%, when in fact it was much higher;

    b.    Charging Annual Percentage Rates on payday loans well in excess of 500%;

    c.      Charging Annual Percentage Rates on payday loans well in excess of the cost of actually providing such loans;

    d.      Concealing the true Annual Percentage Rates it charges on Early Access payday loans, both in the Early Access contract and documents and on monthly bank statements;

    e.      Charging excessive interest and/or finance charges on Early Access loans in violation of Ohio law;

    f.      Requiring its customers to enter into standardized account agreements which include unconscionable provisions; and

    g.      Violating FDIC and OCC regulatory guidance on payday lending.

125.    Considering the great business acumen and experience of Fifth Third Bank in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

126.    The imposition of Early Access Annual Percentage Rates in excess of 120% is itself unconscionable.  Such charges are not reasonably related to the Bank's cost of covering the Early Access loan and/or its risk of nonpayment.

127.    Plaintiffs and members of the Class have sustained damages as a result of Fifth Third Bank's unconscionable policies and practices as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.       Declaring Fifth Third Bank's Early Access fee policies and practices to be wrongful, unfair and unconscionable and providing appropriate injunctive relief;

2.       Restitution of all Early Access fees paid to Fifth Third Bank by Plaintiffs and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.       Disgorgement of the ill-gotten gains derived by Fifth Third Bank from its misconduct;

4.       Actual damages in an amount according to proof;

5.       Punitive and exemplary damages;

6.       Pre-judgment interest at the maximum rate permitted by applicable law;

7.       Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.       Such other relief as this Court deems just and proper.


Dated:  August 3, 2012

*s/ Stuart E. Scott*
STUART E. SCOTT  (0064834)
DANIEL FRECH  (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*dfrech@spanglaw.com*

**Counsel for Plaintiffs and the Proposed Class**

*Of Counsel:*

HASSAN A. ZAVAREEI
JEFFREY KALIEL
**TYCKO & ZAVAREEI, LLP**
2000 L Street, NW, Suite 808
Washington, DC  20036
(202) 973-0900
(202) 973-095 (FAX)
*hzavareei@tzlegal.com*
*jkaliel@tzlegal.com*

BEN BARNOW
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle, Suite 4600
Chicago, IL  60602
(312) 621-2000
(312) 641-5504 (FAX)
*b.barnow@barnowlaw.com*